1998-NMCA-163

967 P.2d 852

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eugene FOSTER, Jr., Defendant–
Appellant.**

**No. 18,450.**

Court of Appeals of New Mexico.

Sept. 22, 1998.

Certiorari Denied, No. 25,415, Nov. 6, 1998.

Tom Udall, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

Hilary Lamberton, Lamberton & Riedel, Santa Fe, for Appellant.

## OPINION

HARTZ, Chief Judge.

{1}  Defendant appeals his convictions on one count of second degree murder, four counts of child abuse, and one count of carrying a concealed weapon. He claims that (1) the prosecutor committed reversible error by commenting on his silence after being arrested and given *Miranda* warnings; (2) reprosecution of Defendant was barred on double-jeopardy grounds because prosecutorial misconduct caused his first trial to end in a mistrial; (3) the district court erroneously denied his motions for a mistrial after a prosecution witness implied that Defendant and his brother had committed prior bad acts; (4) the district court committed reversible error by permitting the prosecutor to use as a demonstrative exhibit a mannequin dressed in the victim's bloody clothes; and (5) Defendant was denied effective assistance of counsel. We affirm the convictions.

## I.  BACKGROUND

{2}  On December 13, 1995, Defendant killed his father's girlfriend, Laverne Mayfield, in the presence of her four children. At trial Defendant claimed self-defense. He testified as follows: He and some friends had been drinking and playing cards at the house he shared with his father and brother. His father came home with Mayfield around 9:00 p.m. Drunk and angry, his father put the barrel of a loaded rifle up to Defendant's head, cocked the trigger, threatened to kill him, and then left with Mayfield. About 40 minutes later Defendant went to Mayfield's house. He and Mayfield had a disagreement and she told him to leave. Mayfield followed him as he was leaving. When he left, the door slammed behind him, but Mayfield immediately opened it, startling him. He then shot her six times in quick succession.

{3}  After shooting Mayfield, Defendant fled home and put the gun in an outside wood box. Clovis police officers arrested Defendant the following day. After he was taken to the police station and given *Miranda* warnings, Defendant made a statement to the officers. He admitted shooting Mayfield. He said that he had argued with his father, but he did not recount the rifle incident. He described where he had put the gun and took a police detective to the hiding place.

{4}  A defense expert, Dr. Moss Aubrey, testified at trial that having a parent hold a gun to one's head would create a high level of stress. A result of this stress can be a state

of hypervigilance, which is characterized by a narrowing of focus and functioning in a "fight or flight" survival mode. Dr. Aubrey stated that by opening the door suddenly after Defendant left. Mayfield may have especially startled Defendant if Defendant was in such a state.

{5} Defendant's first trial was in July 1996. It was aborted when the district court granted Defendant's motion for a mistrial because of errors in the prosecution's opening statement. Defendant contended that the prosecutor had improperly commented on Defendant's right to remain silent by stating that Defendant did not claim self-defense before his arrest or when he made his statement to police. Defendant filed a motion to bar his retrial on double-jeopardy grounds. The motion was denied. At his second trial in November 1996, Defendant was convicted of second degree murder and other offenses. He was sentenced to 28 years in prison. We will summarize additional facts as we address the specific issues on appeal.

## II.  DISCUSSION

### A.  Comment on Silence at Second Trial

{6} At Defendant's second trial, defense counsel described the rifle incident in her opening statement. During direct examination of Clovis police detective Gary Gulley, the prosecutor raised Defendant's failure to mention the incident before trial. Gulley had taken Defendant's statement after his arrest. In questioning Gulley, the prosecutor elicited that Gulley had heard Defendant's opening statement in which the rifle incident was described. He then asked, "When you talked to this defendant, did this defendant . . . tell you anything about that?" Gulley responded that Defendant had not. Defense counsel objected, arguing at a bench conference that testimony about what Defendant did not tell police was an impermissible comment on Defendant's silence. Finding that Defendant had waived his *Miranda* rights, the district court allowed the testimony.

{7} On two occasions later in the trial, the prosecutor again elicited that Defendant had not told the police about the rifle incident. The prosecutor asked Defendant on cross-examination whether he had mentioned the incident to any officer on the day of his arrest. Also, as a rebuttal witness, Gulley repeated the essence of his prior testimony on this issue. Although on these occasions defense counsel did not object on the ground raised on appeal, he apparently had been granted a continuing objection by the district court.

{8} Because the facts are undisputed, we review de novo the legal question whether the prosecutor improperly commented on Defendant's silence. *See State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994). We find no reversible error.

{9} We begin our discussion by noting the general rule forbidding a prosecutor from commenting on a defendant's silence or introducing evidence of silence. There are three independent underpinnings for the general rule: (1) the constitutional privilege against self-incrimination, (2) constitutional due process, and (3) the rules of evidence barring irrelevant evidence, Rule 11–402 NMRA 1998, and evidence whose probative value is substantially outweighed by the danger of unfair prejudice, Rule 11–403 NMRA 1998. Recognizing these different sources of the general rule can assist in the analysis of particular cases, especially when the prosecutor claims an exception to the general rule. Each source deserves a brief comment.

{10} First, the privilege against self-incrimination. The privilege prohibits the prosecutor from commenting on a defendant's failure to testify at trial. *See Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Miller*, 76 N.M. 62, 68–71, 412 P.2d 240, 244–46 (1966). It is uncertain, however, to what extent the privilege precludes comment on a defendant's silence in other contexts. *See Jenkins v. Anderson*, 447 U.S. 231, 241–44, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (Stevens, J., concurring) (disputing whether reference to prearrest silence implicates Fifth Amendment).

{11} As for due process, its application derives from the requirements imposed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When a

defendant has invoked the right to remain silent after being given *Miranda* warnings, use of that silence by the prosecution at trial violates due process. In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court explained:

> [W]hile it is true that *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*See State v. Martin,* 101 N.M. 595, 599–600, 686 P.2d 937, 941–42 (1984).

{12} Finally, even in the absence of constitutional restrictions on the prosecution's use of a defendant's silence, a court need not permit such use at trial. "Each jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial." *Jenkins,* 447 U.S. at 240, 100 S.Ct. 2124; *see Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam). New Mexico has been very cautious about the use of silence at trial. "Evidence of a defendant's postarrest silence is generally inadmissible because the probative value of the silence is substantially outweighed by the potential for unfair prejudice." *State v. Garcia,* 118 N.M. 773, 776, 887 P.2d 767, 770 (Ct.App.1994); *see United States v. Hale,* 422 U.S. 171, 176–77, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (silence following *Miranda* warnings usually has no probative value); *Martin,* 101 N.M. at 599–600, 686 P.2d at 941–42; *State v. Hennessy,* 114 N.M. 283, 288, 837 P.2d 1366, 1371 (Ct.App.1992), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993).

■ {13} We now turn to the analysis of the questioning and evidence challenged in this case. To begin with, we address the cross-examination of Defendant and the rebuttal testimony by Gulley. This evidence was offered after Defendant had testified in his own behalf. Therefore, the privilege against self-incrimination would not bar the evidence. "When [the defendant] takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined." *Jenkins,* 447 U.S. at 235, 100 S.Ct. 2124 (internal quotation marks and citation omitted). In particular, the privilege against self-incrimination is no bar to impeaching a defendant's testimony with evidence of the defendant's silence prior to arrest, *see id.* at 238, 100 S.Ct. 2124; *State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992), or even after arrest, *see Fletcher,* 455 U.S. at 607, 102 S.Ct. 1309 (due process not violated by such impeachment); *Garcia,* 118 N.M. at 777, 887 P.2d at 771.

■ {14} The fact that Defendant testified, however, does not eliminate the due process concern. Even when a defendant has testified, it is fundamentally unfair under the United States Constitution to impeach the defendant's testimony by means of evidence of the defendant's invocation of the right to silence after receiving *Miranda* warnings. *See Doyle,* 426 U.S. at 618, 96 S.Ct. 2240. Nevertheless, here, Defendant did not invoke his right to silence after receiving *Miranda* warnings. He chose to speak to Gulley. The concern in *Doyle* was the implied assurance in the *Miranda* warnings "that silence will carry no penalty." *Doyle,* 426 U.S. at 618, 96 S.Ct. 2240. Defendant did not rely on that assurance. He never invoked his right to remain silent during the interview. "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (per curiam); *accord Martin,* 101 N.M. at 599, 686 P.2d at 941. The *Miranda* warnings do not imply that the arrestee's half-truths will carry no penalty.

■ {15} As for our rules of evidence, they, too, do not bar the impeachment evidence. During his interview with Gulley, Defendant admitted shooting Mayfield and led a detective to the location of the gun used, but he made no mention of the rifle incident. At trial Defendant testified about the rifle incident. The district court could

properly decide that admitting evidence of Defendant's earlier failure to mention the incident had significant probative value. A reasonable person could properly find a telling inconsistency between Defendant's trial testimony and the statement he gave police. *See State v. Olguin*, 88 N.M. 511, 512, 542 P.2d 1201, 1202 (Ct.App.1975). Defendant's failure to mention the incident could suggest that the incident had not occurred or that it had not affected him as claimed. We are comfortable with the district court's finding of substantial probative value in Defendant's failure to mention an important aspect of an incident when giving an ostensibly full account of the incident.

{16} Turning now to the admissibility of Gulley's testimony in the State's case in chief, our analysis is somewhat different. When Gulley first testified regarding Defendant's statement—including Defendant's failure to mention the rifle incident—Defendant had not yet testified at trial. This fact affects the analysis with respect to both the privilege against self-incrimination and the rules of evidence.

{17} As for the privilege against self-incrimination, Defendant had not yet waived his privilege by testifying at trial. But notwithstanding the absence of waiver, Gulley's testimony did not violate Defendant's privilege. Although Defendant had not waived his privilege at trial, he had waived it at the time he gave his statement to Gulley. *See United States v. Goldman*, 563 F.2d 501, 503–04 (1st Cir.1977). In *State v. Johnson*, 102 N.M. 110, 114, 692 P.2d 35, 39 (Ct.App.1984), *overruled in part on other grounds by Manlove v. Sullivan*, 108 N.M. 471, 775 P.2d 237 (1989), we wrote:

> [A] prosecutor's comment on the defendant's exercise of his fifth amendment right to remain silent may constitute error requiring reversal. However, the rule has no application where, as here, the defendant did not remain silent, and after receiving *Miranda* warnings, gave a statement. The fact that a defendant omits details in his statement is certainly not the kind of silence which is constitutionally protected as the defendant does not remain silent with respect to the subject matter of his statement.

(citations omitted). Our Supreme Court has recently expressed the same view. *See State v. Loera*, 1996–NMSC–074, §§ 7–9, 122 N.M. 641, 930 P.2d 176.

{18} Under the rules of evidence, the issue is relevance. Even unprivileged evidence must be relevant to be admissible. *See* Rule 11–402. Defendant's failure to mention the rifle incident when being questioned by Gulley may not have been relevant until Defendant put on evidence of the incident. Nevertheless, we will not reverse on this ground. Defendant did not raise this issue at trial or on appeal. Also, although we do not decide the point, the mention of the incident in defense counsel's opening statement may have sufficed to make the issue relevant. *Cf. State v. Vigil*, 103 N.M. 583, 587–88, 711 P.2d 28, 32–33 (Ct.App.1985) (witness's prior consistent statement admissible to rebut challenge to witness's credibility in opening statement). In any event, there is no question that the evidence would have been admissible later in the trial, and in these circumstances we will not reverse simply because the evidence was admitted prematurely. *See State v. Andrade*, 1998–NMCA–031, ¶¶ 17–19, 124 N.M. 690, 954 P.2d 755.

{19} In sum, we find no reversible error arising from comments on Defendant's failure to mention the rifle incident.

## B. Double Jeopardy

{20} Defendant contends that after his first trial ended in a mistrial, retrial should have been barred. We do not agree. In *State v. Breit*, 1996–NMSC–067, 122 N.M. 655, 930 P.2d 792, our Supreme Court set out the test for determining when the double-jeopardy provision of our state constitution, N.M. Const. art. II, § 15, bars retrial because of prosecutorial misconduct. The *Breit* test requires the following: "[1] improper official conduct [that] is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, [2] [the official's knowledge] that the conduct is improper and prejudicial, and [3] [the official's intent] to

provoke a mistrial or . . . willful disregard of [whether the conduct will require a] mistrial, retrial, or reversal." *Breit,* 1996–NMSC–067, ¶ 32.

{21} Defendant does not contend that the prosecutor intended to provoke a mistrial. When that intent is absent, the misconduct necessary to bar a retrial must be extraordinary. *See id.* at ¶ 35, 930 P.2d 792. Not every prosecutorial error that leads to a mistrial or reversal will justify barring a retrial. On the contrary, it is a remedy to be used sparingly.

{22} This case presents nothing like the extraordinary circumstances that would require barring a retrial. Indeed, the prosecutor's comments on Defendant's silence during the opening statement in the first trial may well have been proper in closing argument. The prosecutor may have erred in addressing Defendant's defenses before they had been raised by Defendant's witnesses or announced in defense counsel's opening statement. But any such error was not sufficiently egregious to bar retrial.

**C.  Prior Bad Acts**

{23} Defendant contends that a State witness impermissibly testified about prior bad acts of Defendant and Defendant's brother Joseph, who later testified for the defense. Clovis police officer Kelly Brophy arrived at the scene of the shooting in response to a 911 call. He testified that when people named Defendant as the shooter, he simply responded "OK." He did not ask for further identifying information. He explained that he knew who Defendant was because he had "dealt with him on the street, being a patrolman." Defense counsel moved for a mistrial, claiming that the officer's remark constituted improper evidence of prior bad acts by Defendant. Rule 11–404(B) NMRA 1998 excludes evidence of prior bad acts "to prove the character of a person in order to show action in conformity therewith," but permits the use of such evidence for other relevant purposes. *See State v. Ruiz,* 119 N.M. 515, 518–19, 892 P.2d 962, 965–66 (Ct.App.1995). The district court declined to declare a mistrial but cautioned the jury as follows: "Ladies and Gentlemen, po-

lice officers deal with people on the street every day. Because a police officer deals with someone should not be taken by you to establish any misconduct on the part of that person."

{24} Denial of a motion for a mistrial is reviewed for abuse of discretion. *See State v. Salazar,* 1997–NMCA–088, ¶ 4, 124 N.M. 23, 946 P.2d 227. Discretion is abused when the decision is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Lucero,* 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct.App. 1982). We find no abuse here. The testimony regarding prior contact with Defendant had the proper purpose of explaining how Brophy could identify Defendant and why he did not seek further identifying information. Also, the probability of improper prejudice was not great, particularly in light of the district court's cautionary instruction and the fact that the challenged remark "was somewhat ambiguous and not emphasized by the witness or counsel." *State v. Gibson,* 113 N.M. 547, 556, 828 P.2d 980, 989 (Ct.App. 1992). Even if the testimony should not have been admitted, the district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial.

{25} Brophy also testified about a traffic stop of Defendant's brother Joseph two or three hours before the shooting. A search of Joseph's vehicle uncovered a box of .32 caliber bullets. Brophy stated that he stopped Joseph because he knew from prior contacts with him that he did not have a driver's license. Defense counsel moved for a mistrial, arguing that the officer's testimony was a "backdoor way" of bringing in prior-bad-act testimony about Joseph. The court offered to instruct the jury to disregard the traffic stop but defense counsel declined the offer. Later, when describing Joseph's demeanor during the stop, Brophy testified that Joseph was polite, probably because "We've talked before." After Defendant again moved for a mistrial, the court directed the officer to confer with the prosecutor so that the prosecutor could instruct the officer on what areas to avoid in his testimony. Although the

State has failed to explain on appeal why the testimony concerning the stop of Joseph was relevant to any issue at trial, we affirm the denials of Defendant's motions. Any prejudice to Defendant seems too attenuated to have denied him a fair trial.

### D. The Mannequin

{26} Defendant claims that the district court committed reversible error in permitting the medical examiner to use a mannequin dressed in the blood-stained clothes of the victim as a demonstrative exhibit during his testimony. Defendant argued at trial that any probative value in using the mannequin was outweighed by the prejudice to Defendant. She requested that the mannequin not be used if it was going to be clothed in the deceased's garments.

{27} The district court was required to weigh the possibility of unfair prejudice against the utility of using the clothing to explain what had occurred. *Cf.* Rule 11–403 NMRA 1998 (exclusion of relevant evidence because of risk of unfair prejudice). We apply an abuse-of-discretion standard in reviewing such decisions. *See State v. Fuentes*, 91 N.M. 554, 558, 577 P.2d 452, 456 (Ct.App. 1978).

{28} We find no abuse of discretion here. During voir dire outside the presence of the jury, the medical examiner testified that the clothes on the mannequin would be useful in demonstrating to the jury the location of the wounds and that the wounds were the result of close-range firing. Defense counsel argued that the autopsy report would reveal the same information. The court held that there was probative value in showing the mannequin with the clothing and that the probative value of the exhibit outweighed any prejudice. We cannot say that the court should have required the prosecutor to rely on a written report and thereby denied the prosecutor the use of visual aids to explain what happened. Demonstrative exhibits are likely to be merely illustrative of other evidence. That does not make them inadmissible as cumulative evidence. *See State v. Hoxsie*, 101 N.M. 7, 9, 677 P.2d 620, 622 (1984), *overruled on other grounds by*

*Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 108 (1989).

### E. Ineffective Assistance of Counsel

{29} Defendant's claim of ineffective assistance of counsel rests on the assumption that his attorney did not object to the prosecutor's comments on Defendant's failure to mention the rifle incident when giving his statement to Gulley. Our review of the record, however, indicates that defense counsel did object. Therefore, this claim has no merit.

### III. CONCLUSION

{30} We affirm Defendant's convictions and sentence.

{31} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.