This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                              **NO. 27,763**

**ISMAEL VASQUEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas Driggers, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Assistant Public Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

Defendant appeals from the judgment and sentence after a jury found him guilty of robbery and tampering with evidence, and Defendant admitted he is an habitual offender. We affirm.

**BACKGROUND**

On April 10, 2005, Victim was driving down Highway 478 near Las Cruces at approximately 3:30 a.m. As Victim passed Carver Road she noticed a little green car behind her. Victim came to a four-way-stop where the car following her reappeared and blocked her progress. Victim watched the driver of the green car as he exited his vehicle and walked over to the driver's side of her car, and she rolled down her window to see what he wanted. The man asked Victim if she had any money. His face was less than a foot away and she responded that she did not have any and he inquired about money he saw within her car. Victim said "just take it." The man then opened her door and demanded Victim's cell phone and cigarettes. This activated the interior light of Victim's car and illuminated his face, giving her an even better view of his face. Victim complied, and after taking the battery out of Victim's phone, he returned it to her and quickly took off.

Victim went to her parents' home. Her mother called the police and Victim gave the dispatcher a description of her assailant and the vehicle he was driving. Victim described her assailant as "not shaven, a goatee, I remember a backwards cap, a ponytail, I remember tattoos on his neck and some on his arm, I remember a big red jacket and just a T-shirt underneath and jeans and a pair of shoes, and I remember his eyes were really bloodshot."

Defendant was stopped driving near the vicinity of the crime by Officer Mark Madrid of the Motor Transportation Division for running a stop sign at approximately 4:30 a.m. Officer Madrid had heard the description Victim had provided of her assailant over the police dispatch radio, and he turned Defendant over to the Doña Ana Sheriff's Department for a show-up identification. Defendant was the only person presented to Victim for identification, and he was handcuffed and surrounded by police officers.

Arriving at the identification scene approximately thirty minutes to an hour after the incident, Victim saw several police officers with lights pointed at the green car she encountered. A police officer assured Victim that with all the lights in his face, Defendant did not know she was present. An officer asked Victim, "Is this the guy?" From five or six feet away, Victim identified Defendant as the man who had robbed her. Defendant was in handcuffs with the police lights shining on him when Victim identified him. At trial, Victim confirmed Defendant was the man she identified at the show-up identification. Victim stated she had sufficient light and time to identify Defendant as her assailant.

On April 21, 2005, Defendant was charged with one count of robbery and one count of tampering with evidence. Defendant entered a plea of not guilty. On October 25, 2006, Defendant met with his appointed counsel from the public

4

defender's office, and Defendant indicated he intended to enter into a plea and disposition agreement with the State. At the plea hearing the next day, however, Defendant told the district court that he wanted to be tried on the charges while also asserting that he had not seen his attorney in months and that he was in the process of suing his attorney.

Trial commenced on October 27, 2006, and counsel asked for permission to withdraw and a continuation of the trial. The district court advised it found no record of a suit being filed against counsel by Defendant and denied the motions. However, the district court appointed an additional public defender to represent Defendant. Although he had only one evening to prepare for trial, the second attorney expressed his willingness to proceed with trial, and he was given an additional opportunity to meet with Defendant for thirty minutes before jury selection commenced. Defendant also declared he was willing to proceed with the trial at that time.

During his closing argument, the prosecutor stated:

> Speculation, conjecture, all of that is not evidence. The only evidence is that when the victim was here, this man came up to her, approached her, and took her money, her cell phone battery and her cigarettes. That's the only evidence. And, ladies and gentlemen, that evidence is undisputed. That's right. It's undisputed. You have not heard anything to the contrary.

Defendant immediately objected, asserting the argument violated his Fifth Amendment right to remain silent. The State denied that the argument violated Defendant's Fifth Amendment privilege and asserted it was based on the evidence presented at trial. Defendant's subsequent motion for a mistrial was denied by the district court.

Defendant was found guilty of both charges, and he appeals.

**DISCUSSION**

On appeal, Defendant asserts: (1) the district court abused its discretion in admitting the show-up identification into evidence; (2) the district court erred in denying his attorney's motion to withdraw and in failing to continue the trial; and (3) the prosecutor's closing argument constituted a comment on his failure to testify at trial. We address each of these issues in turn.

**The Show-up Identification Was Properly Admitted at Trial**

Defendant asserts that admission of the show-up identification into evidence constituted reversible error. Our review is de novo. *State v. Johnson*, 2004-NMCA-058, ¶ 12, 135 N.M. 567, 92 P.3d 13.

A show-up identification is a pretrial identification procedure in which a suspect is confronted with a witness or victim of a crime. "Reliability of the identification is a due process requirement." *Id.* ¶ 13. "Due process requires that

showup identifications be reliable under the totality of the circumstances to be admissible." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 20, 130 N.M. 179, 21 P.3d 1032. We recognize that show-up identifications are inherently suggestive, *see id.* ¶ 21, but when the indicia of reliability are sufficient to outweigh the suggestiveness, the evidence is admissible. *Johnson*, 2004-NMCA-058, ¶ 16. *See also State v. Maes*, 100 N.M. 78, 82, 665 P.2d 1169, 1173 (Ct. App. 1983) ("[E]ven if the identification procedure is suggestive the evidence is admissible when the totality of the circumstances indicate the identification is reliable."), *abrogated on other grounds by State v. Fuentes*, 119 N.M. 104, 106-07, 888 P.2d 986, 988-89. The reliability of show-up identifications are measured by the five factor test described in *Johnson*, 2004-NMCA-058, ¶ 13: (1) the witness's opportunity to view the subject at the time; (2) the attention paid by the witness; (3) the accuracy of any pre-identification description; (4) the witness's level of certainty at the identification; and (5) the amount of time elapsed between the incident and the show-up.

Victim's opportunity to view Defendant at the crime scene was sufficient to generate a reliable identification. Victim observed and interacted with Defendant at the crime scene in close proximity to him, and based on that encounter, made several specific identifications as to what Defendant was wearing, as well as his tattoos, hair style, and physical characteristics. In contrast, the identification in *Johnson* was

7

invalid because it was made in the dark from a distance of sixty to eighty yards, and the witness was not able to see the defendant's facial features. We therefore conclude the first reliability factor is satisfied. The second reliability factor is also satisfied. "There is no evidence that [Victim's] degree of attention was impaired during the period of time [she] observed the perpetrator[]." *Id.* ¶ 20.

The third, fourth, and fifth reliability factors are also satisfied. When Victim spoke to the police dispatcher, Victim provided a dependable pre-identification description of the perpetrator and remained consistent in her description at the show-up identification and at trial. Finally, only thirty minutes to an hour elapsed from the time of the incident to the identification. We therefore conclude the show-up identification was reliable under the *Johnson* factors.

Integral to defense counsel's assertion that the show-up identification was unreliable is that Defendant was in police handcuffs, surrounded by police officers, and near police cars during the show-up identification. Thus, Defendant asserts, the show-up was overwhelmingly suggestive that the person presented was Victim's assailant. However, we have already held that similar circumstances are not per se unnecessarily suggestive so as to violate due process. During a show-up,

> [t]he fact that defendant was either the sole occupant of the police car, or was standing alongside the police car, and the fact that he was in the presence of police officers during the confrontation, are simply the usual

8

elements in any police conducted on-the-scene confrontation. While these elements are suggestive, they were not unnecessarily suggestive. These elements are to be considered by the trial court in evaluating the totality of the circumstances. These elements in themselves do not require exclusion of the evidence.

*State v. Torres*, 88 N.M. 574, 575, 544 P.2d 289, 290 (Ct. App 1975) (citations omitted).

Considering the totality of circumstances, the show-up identification in this case was not impermissibly suggestive. Sufficient indicia of the reliability of Victim's identification of Defendant are present to conform with the dictates of due process in this case.

**The District Court Properly Denied the Motions to Withdraw and for a Continuance**

Defendant argues the district court erred in its denying his motions to withdraw and continue the case, resulting in a near total lack of preparation and ineffective representation by defense counsel at trial.

Motions for continuance at trial are within the discretion of the district court and are reviewed only for an abuse of discretion. *See State v. Baca*, 85 N.M. 55, 58, 508 P.2d 1352, 1355 (Ct. App. 1973) (holding that the continuance of a case rests within the sole discretion of the district court and its action will not be questioned unless it appears there has been an abuse of discretion); *State v. Martinez*, 83 N.M. 9,

9

10, 487 P.2d 919, 920 (Ct. App. 1971) ("A motion for continuance is directed to the discretion of the court and the denial of the motion is not error unless there is a clear abuse of discretion."). There is no abuse of discretion where it cannot be shown that denying a continuance is prejudicial. *State v. Garcia*, 82 N.M. 482, 482, 483 P.2d 1322, 1322 (Ct. App. 1971). Similarly, the decision of whether to appoint substitute counsel lies within the discretion of the district court. *State v. Lucero*, 104 N.M. 587, 592, 725 P.2d 266, 271 (Ct. App. 1986). To warrant the dismissal of appointed counsel, a defendant must make a showing that failure to appoint substitute counsel will result in ineffective representation or prejudice to the defense. *Id.*

The Sixth Amendment right to counsel includes the right of a criminal defendant to the effective assistance of counsel. *State v. Brown*, 2006-NMSC-023, ¶ 16, 139 N.M. 466, 134 P.3d 753. However, an indigent defendant who has a right to appointed counsel does not also have a right to the appointment of counsel of his choice. *Lucero*, 104 N.M. at 592, 725 P.2d at 271. Furthermore, a defendant will not be permitted to frustrate the criminal process by seeking the appointment of substitute counsel at the last moment. *Id.*

Defendant originally retained counsel who was then allowed to withdraw, because of a deterioration of the relationship; this required the State to seek and obtain an extension of time within which to commence trial from the district court; a

10

subsequent trial setting was vacated due to a change of attorneys; and two extensions of time to commence trial had to be obtained from the Supreme Court. In this context, the district court denied the motion for a continuance, citing its backlog of cases. In addition, the case was set for trial, prospective jurors were present, and the witnesses were present. Furthermore, counsel acknowledged that her visits with Defendant were sufficient for adequate defense preparation, and there was no evidence that Defendant had sued her. Finally, Defendant specifically consented to proceeding to trial under the circumstances.

We conclude the district court did not abuse its discretion.

**The Prosecutor's Comment in Closing Argument Was a Fair Response to Defendant's Arguments**

Defendant asserts the State impermissibly commented on his failure to testify at trial, violating Defendant's right to remain silent under the Fifth Amendment of the United States Constitution. "Because the facts are undisputed, we review de novo the legal question whether [the State] improperly commented on Defendant's silence." *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. We find no reversible error.

Defendant's closing statement proposed to the jury that the encounter between Victim and Defendant may not have been a robbery but something else. In light of

11

that argument, the prosecutor could properly argue that "[t]he only evidence is that when the victim was here, this man came up to her, approached her, . . . took her money, her cell phone battery and her cigarettes"; that this evidence was undisputed; and that the jury had not heard anything to the contrary in the evidence. We conclude the prosecutor's statement was fair and based on the evidence presented rather than impermissible argument that Defendant did not testify.

**CONCLUSION**

The judgment and sentence are affirmed.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

13