The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: February 28, 2023

**No. A-1-CA-39573**

**CITY OF LAS CRUCES,**

      Plaintiff-Appellee,

v.

**TERESA CARBAJAL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Court Judge**

City of Las Cruces
Robert A. Cabello, Deputy City Attorney
Las Cruces, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# OPINION

**YOHALEM, Judge.**

{1}     Today we are asked to determine whether a drug recognition expert (DRE) examination for drug use while driving is something that implicates a defendant's right to remain silent. Under the facts of this case, such an examination was a custodial interrogation, because it called, in part, for spoken responses by Defendant to spoken questions by the DRE investigator. The prosecutor's introduction of testimony and comments on Defendant's post-*Miranda*[1] warning silence to show a consciousness of guilt was therefore plain error, requiring reversal. Concluding that the evidence was sufficient to sustain a conviction for driving under the influence (DUI), we reverse and remand for a new trial on the DUI charge. We also vacate the ninety-day suspended sentence imposed for driving without a license and remand for imposition of the fine authorized by the Las Cruces Municipal Code of Ordinances, Las Cruces, N.M. Code of Ordinances (LCMC), ch. 27, art. VI, § 27-12-6-12.6(A)(6) (2007);[2] LCMC, § 27-12-14-4.

---

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]In the remainder of this opinion, we cite to the Las Cruces Municipal Code of Ordinances, Las Cruces, N.M. Code of Ordinances adopting the abbreviation "LCMC," used by the parties. We cite only the section number in the subsequent citations to the ordinances, rather than citing to the chapter and article. All subsequent articles referenced can be found within Chapter 27 of the ordinance.

## BACKGROUND

{2} On April 5, 2018, Defendant was driving in Las Cruces, New Mexico, when she was stopped by Las Cruces Police Officer Robert Holguin for driving with a broken taillight. Following a brief investigation, Officer Holguin arrested Defendant for violating LCMC, § 27-12-6-12.1(C), which prohibits "any person who is under the influence of any drug to a degree which renders the person incapable of safely driving a vehicle" from driving within the municipality of Las Cruces, New Mexico. Defendant's arrest was based on Officer Holguin's belief that there was probable cause to believe Defendant was under the influence of marijuana to a degree that rendered her incapable of safely driving. Defendant was also charged with several minor traffic offenses: a broken taillight, driving without a license, driving without a registration, and driving without insurance, in violation of LCMC, § 27-12-10-1.7(C) (taillight); LCMC, § 27-12-6-12.5 (license); LCMC, § 27-12-10-4 (registration), and LCMC, § 27-12-10-6 (insurance).

{3} Defendant pleaded guilty in municipal court to the broken taillight and to driving without registration and insurance, offenses punishable by a fine. She was then tried in municipal court before a judge, without a jury, and convicted of operating a motor vehicle under the influence of intoxicating drugs, contrary to LCMC, § 27-12-6-12.1(C), and driving without a license, contrary to LCMC, § 27-12-6-12.5. Defendant appealed her convictions to the district court, pursuant to

2

NMSA 1978, Section 35-15-10 (1959), which provides for a de novo bench trial in the district court on appeal from a municipal court.

{4}    At trial in the district court, Officer Holguin testified about the events that led to the arrest of Defendant for DUI. Officer Holguin's body camera video recording was admitted into evidence. The recording begins with the traffic stop, shows Defendant performing field sobriety tests, shows Defendant's arrest, shows Officer Holguin reading the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019), shows Defendant handcuffed in the back seat of Officer Holguin's vehicle on the drive to the police station, and ends with Defendant's arrival at the police station.

{5}    Officer Holguin testified that he stopped Defendant solely for a broken taillight; he did not have the opportunity to observe any problem with Defendant's driving. When he approached the driver's side of Defendant's vehicle following the stop, Officer Holguin reported that he smelled a strong odor of perfume. After learning that Defendant did not have a valid driver's license, registration, or insurance, Officer Holguin took the alternative documentation Defendant provided back to his vehicle.

{6}    When he again approached Defendant's vehicle, he did so from the passenger side, where he reported smelling a strong odor of marijuana. Officer Holguin testified that, based on his experience as a police officer, he suspected that perfume

was being used to cover up the smell of marijuana. He questioned Defendant about her drinking or drug use. She admitted that she had smoked marijuana the previous day, but denied smoking that day, claiming her children had been smoking in the car.

{7}     Officer Holguin asked Defendant whether she was willing to take field sobriety tests. She agreed. The officer performed three tests: the Horizontal Gaze Nystagmus test (HGN); the walk and turn test, and the one leg stand test. For each test, Officer Holguin reported that he asked Defendant if she had a medical condition and received a negative response. He then explained how to perform the test, and demonstrated for Defendant how she was to perform the walk and turn and one leg stand test.

{8}     In describing Defendant's performance on the walk and turn test, Officer Holguin testified that Defendant took her shoes off, could not keep her stance before starting, had the wrong foot in front, stepped off the line during the test two times, and did not turn as demonstrated. Officer Holguin identified these errors as clues suggesting intoxication. During the one leg stand test, according to Officer Holguin, Defendant put her foot down, was swaying, used her arms for balance, and stopped the test prematurely. Based on her performance on these two tests, Officer Holguin believed that Defendant was under the influence of marijuana. He placed her under arrest.

**{9}** Officer Holguin then read Defendant the Implied Consent Act advisory and asked whether she would agree to a breathalyzer test. Defendant asked him to read the advisory again and he did. Both times the advisory included telling Defendant that she had a right to an independent chemical test. She initially refused consent to a breathalyzer test. After further explanation, she consented.

**{10}** Defendant was handcuffed, placed in the back seat of the police vehicle, and taken to the police station where she was given a breathalyzer test. The test showed no alcohol in her system. Officer Holguin testified that he requested that a DRE perform an examination, known as a DRE examination. Officer Holguin then testified, without defense objection, that he believed Defendant had refused the DRE examination.

**{11}** Officer Ryan Postenrieder, the DRE who was called to examine Defendant, testified next as a prosecution witness. Officer Postenrieder testified that he was asked to conduct a DRE examination of Defendant. He went to the jail cell where Defendant was being held, introduced himself, and read Defendant the standard *Miranda* warnings from the card he carried. Officer Postenrieder did not read Defendant the Implied Consent Act advisory. After giving Defendant *Miranda* warnings, he asked her whether she would agree to a DRE examination. She asked what that was. Officer Postenrieder told her "that [he] was going to continue to talk to [Defendant] about what was going on and ask her more questions." Defendant

then refused to answer his questions. Officer Postenrieder honored her refusal and left the cell.

{12}    There was no defense objection to Officer Postenrieder's testimony as to Defendant's refusal to be questioned. Defendant later took the stand and testified that she refused to answer Officer Postenrieder's questions stating, "Because it is my right." In closing argument, the prosecution twice relied on Defendant's refusal to answer Officer Postenrieder's questions, arguing to the district court that her refusal to participate in the DRE examination showed Defendant's consciousness of guilt. Again, no objection was made.

{13}    Defendant was again convicted in the district court of DUI, contrary to LCMC, § 27-12-6-12.1(C), and driving without a license, contrary to LCMC, § 27-12-6-12.5. The district court's judgment relies on Defendant's "refus[al] to take the DRE evaluation" as support for the conviction. The district court notes that it reviewed the officer's lapel video exhibit and concluded, based on the video, that Defendant "was unable to follow the instructions of the officer as he conducted the . . . HGN test"; on the walk and turn test, Defendant "could not keep her instructional stance, stood with the incorrect foot in front, stepped offline, made an improper turn and again stepped offline on her return walk"; and, on the one leg stand, Defendant "placed her foot down on the sidewalk, used her arms for balance, began swaying,

6

again placed her foot down and stopped performing the test before being instructed to stop."

{14} Defendant was sentenced to ninety days for her DUI conviction, and an additional ninety days for driving without a license, both of which were suspended. Defendant did not object to the ninety-day suspended sentence for driving without a license, even though that sentence was not authorized by the municipal ordinance. Defendant instead relied on her 180-day suspended sentence to claim that she was denied her right to a jury trial, allegedly contrary to both the Sixth Amendment of the United States Constitution, and the Fourteenth Amendment's Equal Protection Clause, claims she pursues in this appeal. The district court concluded that Defendant had no right to a jury trial.

{15} This appeal followed.

**DISCUSSION**

**I.      The Prosecution Improperly Questioned Witnesses and Commented on Defendant's Post-*Miranda* Warning Silence**

{16} Defendant contends that the prosecutor's questions and comments about Defendant's refusal to speak with Officer Postenrieder in conjunction with his attempt to perform a DRE examination were impermissible questions and commentary on Defendant's post-arrest and post-*Miranda* warning silence, in violation of Defendant's Fifth Amendment right against self-incrimination; her Fourteenth Amendment right to due process; and New Mexico's Rule 11-403

7

NMRA, prohibiting the introduction of evidence that is more prejudicial than probative. We agree that reversal is required.

**A.     The Prosecutor's Questions About Defendant's Refusal to Answer the DRE's Questions Violated Defendant's Fifth Amendment Privilege Against Self-Incrimination and Her Right to Due Process**

{17}     Where the facts are not in dispute, we review de novo the legal question of whether the prosecutor improperly elicited testimony about or improperly commented on a defendant's post-arrest silence. *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852.

{18}     Officer Postenrieder was called to the stand by the prosecution to testify about Defendant's refusal to take the DRE examination. It is undisputed that at the time Defendant was questioned by Officer Postenrieder she was under arrest and in police custody. It is also undisputed that Officer Postenrieder gave Defendant standard *Miranda* warnings immediately after introducing himself. These warnings include advising Defendant that she had the right to remain silent and that her silence would not be used against her. *See State v. Salazar*, 1997-NMSC-044, ¶ 60, 123 N.M. 778, 945 P.2d 996 (noting that *Miranda* holds that the United States Constitution requires advice to an accused that the defendant has the right to remain silent as a condition of using incriminating statements made by the defendant in a custodial interrogation). After being given the *Miranda* warning, Defendant invoked her right to remain silent.

{19} The City attempts to distinguish this case from the general rule that the prosecution cannot question a law enforcement officer about a defendant's post-*Miranda* warning silence or comment on that silence by claiming that the DRE examination is not testimonial and elicits primarily physical evidence. Because the Fifth Amendment right against self-incrimination applies only to testimonial evidence, and not to refusal to provide physical evidence, the City claims that it was free to introduce evidence of Defendant's refusal to take the DRE examination, to comment on that refusal, and to argue to the district court that her refusal was evidence of her consciousness of guilt. We are not persuaded.

{20} The City is correct that *Miranda* warnings are designed to protect an accused's Fifth Amendment right against self-incrimination, and that the right against self-incrimination applies to requests for testimonial or communicative evidence and not to requests for physical evidence. *See City of Rio Rancho v. Mazzei*, 2010-NMCA-054, ¶¶ 25, 27, 148 N.M. 553, 239 P.3d 149 (holding that the right against self-incrimination does not apply to physical evidence and that *Miranda* warnings are not required prior to being advised and tested pursuant to the Implied Consent Act for such evidence). The City is not correct, however, that this exception is applicable to Defendant's invocation of her right to remain silent in the context of a DRE examination. We explain.

9

{21} "Interrogation" subject to *Miranda* safeguards "come[s] into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *State v. Alvarado*, 2019-NMCA-051, ¶ 11, 448 P.3d 621 (internal quotation marks and citation omitted). The testimony of Officer Postenrieder at trial revealed that he sought Defendant's consent to question her about her consumption of drugs and about whether she was intoxicated, the central elements of the crime of DUI. *See State v. Widmer*, 2020-NMSC-007, ¶ 19, 461 P.3d 881 (explaining that any questioning related to evidence of a crime is subject to *Miranda* safeguards). Officer Postenrieder did not ask to physically examine Defendant, nor did he seek her permission for breath or blood testing, as required by the Implied Consent Act.

{22} After giving Defendant *Miranda* warnings, Officer Postenrieder testified that he asked her whether she would agree to a DRE examination. She asked what that was. He told her "that [he] was just going to continue to talk to her about what was going on and ask her more questions." Stated differently, when asked by Defendant what the DRE examination entailed, Officer Postenrieder's response was effectively an expression of his intent to question Defendant about her guilt.

{23} The purpose of *Miranda* warnings is to "grant the suspect an awareness of the right so the suspect can make a knowing, intelligent and voluntary choice to speak." *State v. Filemon V.*, 2018-NMSC-011, ¶ 48, 412 P.3d 1089. Defendant, in custody, provided with the *Miranda* warning and the information that Officer Postenrieder

wanted to interrogate her, invoked her right to remain silent and refused to answer Officer Postenrieder's questions. Such a circumstance is distinct from a defendant refusing to provide physical evidence.

{24}     We see no merit to the City's claim that because there are other parts of the DRE examination that rely on physical evidence, the City is free to introduce as evidence of guilt Defendant's refusal to answer Officer Postenrieder's questions—questions that called for spoken answers. In its decision in *Doyle v. Ohio*, 426 U.S. 610, 618 (1976), the United States Supreme Court held that allowing the prosecution to introduce evidence that a defendant exercised their Fifth Amendment right and remained silent in the face of police questioning, after having been assured by a *Miranda* warning that there would be no penalty for doing so, would be a violation of due process. *See id.* (holding that in light of the assurance implicit in the *Miranda* warning that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process" to allow post-*Miranda* silence to be used in a criminal trial "to impeach an explanation subsequently offered at trial"). A defendant has a right to rely on the state's promise that their silence will not be used to convict them. *See Foster*, 1998-NMCA-163, ¶ 14 ("[I]t is fundamentally unfair under the United States Constitution to impeach the defendant's testimony by means of evidence of the defendant's invocation of the right to silence after receiving *Miranda* warnings.").

11

{25}    Officer Postenrieder's request of Defendant did not describe or ask her consent for any portion of the DRE examination other than conducting an interrogation, nor did he distinguish the consequences of a refusal by Defendant to provide physical evidence from the *Miranda* warning's assurance that her refusal to answer his questions would not be used against her. Defendant, therefore, had a due process right to rely on the *Miranda* warning's promise that her refusal to participate in the DRE examination would not be used by the prosecution at trial to imply her guilt.

**B.    The Admission of Evidence of Defendant's Silence Was Plain Error**

{26}    In *State v. Lara*, 1975-NMCA-095, ¶ 10, 88 N.M. 233, 539 P.2d 623, this Court held that the admission of evidence about a defendant's invocation of their right to remain silent, even if not objected to by the defense, requires reversal as plain error. *See* Rule 11-103(E) NMRA (providing that, even if not properly preserved, "[a] court may take notice of plain error affecting a substantial right"). Because silence is often too ambiguous to have great probative force and may be given improper weight by a jury or the court, this Court adopted a per se rule that questioning about a defendant's silence by the prosecution, absent some valid reason apart from implying guilt from a refusal to answer, is so prejudicial that reversal is always required. *See Lara*, 1975-NMCA-095, ¶¶ 6, 10; *see also State v. Baca*, 1976-NMSC-015, ¶ 5, 89 N.M. 204, 549 P.2d 282 ("Any reference to the defendant's

silence by the state, if it lacks significant probative value, constitutes plain error under [Rule 11-103(E)] of the New Mexico Rules of Evidence. As such it would require reversal, as stated in the *Lara* case, even if the defendant fails to timely object."). Reversal is therefore required here.

## II.      Sufficient Evidence Supported Defendant's Conviction

{27}      Defendant claims that the evidence in the record is insufficient to support her conviction. We consider this argument, even though we are reversing her conviction, to determine whether remand for a new trial is permitted. *See State v. Gonzales*, 2013-NMSC-016, ¶ 17, 301 P.3d 380 ("[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." (internal quotation marks and citation omitted)).

{28}      "When considering whether sufficient evidence exists to support retrial, we consider all evidence—even that which was wrongfully admitted." *State v. Miera*, 2018-NMCA-020, ¶ 47, 413 P.3d 491. We "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256 (internal quotation marks and citation omitted). We then determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

13

**{29}** LCMC, § 27-12-6-12.1(C), the ordinance under which Defendant was convicted of DUI, states as follows:

> It is unlawful for any person who is under the influence of any drug to a degree which renders the person incapable of safely driving a vehicle to drive any vehicle within this municipality.

**{30}** To the extent Defendant is arguing that a conviction under this ordinance requires direct evidence of erratic driving to convict, we do not agree. The ordinance permits conviction based upon evidence that the accused is under the influence of a drug "to a degree which renders the person incapable of safely driving." *Id.* The factfinder is permitted to determine from viewing the video of Defendant performing the field sobriety tests, and from listening to the testimony of Officer Holguin concerning his observations, the degree to which Defendant was impaired. From the degree of impairment, the factfinder is permitted to draw an inference that Defendant was not capable of safely driving.

**{31}** Our review of the transcript reveals sufficient evidence of Defendant's intoxication to support a finding by a rational factfinder that Defendant was under the influence of marijuana to a degree that impaired her ability to drive safely. Officer Holguin's testimony that there was a strong smell of marijuana from the passenger side of the vehicle, combined with his testimony that perfume is often used to cover the smell of marijuana, suggested recent use of marijuana. The district court found Defendant's contrary testimony not to be credible. To the extent

14

Defendant asks us to disregard the court's credibility determination and give more weight to her testimony, we will not do so. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("As a reviewing court we do not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses."). Nor will we second-guess the district court's evaluation of the extent of intoxication demonstrated by Defendant in the field sobriety tests.[3] In evaluating the sufficiency of the evidence, we also consider the evidence that Defendant refused the DRE examination.

{32}     Taken together, with all inferences drawn in favor of the verdict, *see Storey*, 2018-NMCA-009, ¶ 45, the evidence is sufficient to justify a finding by a rational factfinder that each element necessary to support a conviction was established by evidence beyond a reasonable doubt. Therefore, there is no double jeopardy bar to retrial. *See State v. Dowling*, 2011-NMSC-016, ¶ 47, 150 N.M. 110, 257 P.3d 930 (holding that retrial is not barred when sufficiency of the evidence challenge fails).

---

[3]We note that Defendant argues as part of her sufficiency of the evidence argument that the field sobriety tests are not scientifically valid measures of intoxication with marijuana. Defendant, however, did not object to the admission of this evidence at trial. Defendant's claim that this evidence should have been excluded as scientifically unreliable, therefore, was not preserved in the district court and we will not review it on appeal. *See State v. Lente*, 2005-NMCA-111, ¶ 11, 138 N.M. 312, 119 P.3d 737 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon.").

## III.   A Sentencing Error Does Not Give Defendant a Right to a Jury Trial

**{33}**   Defendant's claim on appeal that she has both a Sixth Amendment and a Fourteenth Amendment right to a jury trial is apparently founded on a sentencing error. Although Defendant's argument is far from clear, it appears that she is claiming that this sentencing error subjected her to the possibility of six months in prison, and, therefore, she was entitled to a jury trial.

**{34}**   This argument is without merit. Defendant cannot rely on a sentencing error to claim a right to trial by jury. The district court lacked jurisdiction to sentence Defendant to more than 179 days in prison on her DUI conviction and to fine her $126 on her conviction for driving without a license. *See* LCMC, § 27-12-6-12.2(D) (assessing sentencing, penalties, and fees for DUI); LCMC, § 27-12-14-4 (assessing fine for no license). *See State v. Trujillo*, 2007-NMSC-017, ¶ 10, 141 N.M. 451, 157 P.3d 16 ("A trial court's power to sentence is derived exclusively from statute." (internal quotation marks and citation omitted)). Therefore, Defendant could not be sentenced to six months or more in prison and had no right to a jury trial.

**{35}**   The appropriate remedy for the sentencing error that underlies Defendant's jury trial argument is to vacate the unauthorized ninety-day sentence for driving without a license, and remand for imposition of the sentence authorized by LCMC, § 27-12-14-4 for driving without a license: a $126 fine.

## IV.    Defendant Was Informed of Her Right to a Chemical Test

{36}    Defendant's argument that she was not informed of her right to an independent chemical test, in conformance with the requirements of the Implied Consent Act, *see* § 66-8-109(B), is not supported by the record. Defendant admits in her appellate brief that the entire Implied Consent Act's statutory notice was read to her before she consented to a breathalyzer test. Indeed, it was read to her twice. We therefore do not consider this argument further.

## CONCLUSION

{37}    We conclude that Defendant's conviction for DUI was supported by substantial evidence. However, the admission of Defendant's post-*Miranda* warning refusal to take the DRE examination requires reversal. We therefore reverse and remand for a new trial. We also vacate Defendant's sentence for driving without a license and remand for correction of her sentence in accordance with this opinion.

{38}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**KRISTINA BOGARDUS, Judge**

17