This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37061**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**OMAR MILLIRANS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals following his convictions for two counts of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2019); trafficking controlled substances (possession with intent to distribute), contrary to NMSA 1978, Section 30-31-20 (2006); dangerous drugs (conditions for sale), contrary to NMSA 1978, Section 26-1-16 (2013); and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001, amended 2019), contending that (1) the district court erred in denying his motion for mistrial based on a witness's reference to a

homicide investigation, and (2) the jury instruction on possession of drug paraphernalia was erroneous. We conclude that the denial of the motion for mistrial did not constitute an abuse of discretion. However, the jury instruction on the possession of paraphernalia charge omitted an essential element of the crime and consequently, the conviction cannot stand. We therefore affirm in part, reverse in part, and remand.

**BACKGROUND**

**{2}** Police officers, suspecting that Defendant was involved in a murder case, visited Defendant at his home and transported him in a patrol vehicle to the police station for an interview. The next day, one of the officers found a small bag of methamphetamine in the patrol vehicle where Defendant had been seated. The vehicle had been locked outside the officer's house overnight, and no one else had been transported in it in the interim.

**{3}** Three days after officers interviewed Defendant, a different officer initiated a traffic stop and arrested Defendant pursuant to an active warrant. In the course of the ensuing search of Defendant's person and vehicle, numerous incriminating items were discovered, including two small bags of methamphetamine, four prescription pill bottles not prescribed to Defendant containing eight different kinds of pills, a digital scale with what appeared to be methamphetamine residue, and three cell phones. The cell phones contained conversations with numerous people about drug transactions, including a request for a "G" followed by a response that Defendant was "making it," haggling over the price of a "G" and a photo of what appeared to be a gram of methamphetamine, and discussions about the sale of Xanax. The phones also contained conversations that included "selfies" of Defendant. The methamphetamine found in the patrol unit after the interview and the various controlled substances and drug-related items found on Defendant's person and in his vehicle on the day of his arrest form the basis for the underlying charges in this case; Defendant was never charged in connection with the homicide investigation.

**{4}** Prior to trial, the prosecutor instructed all of the State's witnesses to avoid any mention of the fact that a homicide investigation had sparked the initial police interview with Defendant. Throughout direct examination, both the prosecutor and the witnesses observed this limitation. However, in the course of cross-examining one of the police officers who had participated in the initial interview, defense counsel asked whether she had any "other involvement" in the case, to which the officer replied, "Ah, yes. It was in a homicide investigation." Defense counsel approached the bench and indicated that he had not anticipated that response. The prosecutor explained that the witness was likely trying to clarify that she had been involved in two entirely separate investigations. The district court then discharged the jury for an early lunch break to allow for a bench conference on the matter, during which Defendant requested a mistrial.

**{5}** In the course of the ensuing bench conference, the district court and counsel discussed the potential prejudice and the court solicited curative instructions. Defense counsel maintained that a mistrial was the only adequate remedy and declined to

participate in crafting an instruction, even in the alternative. The State offered an instruction that specifically mentioned the witness's reference to a homicide investigation and instructed the jury to disregard it. Ultimately, the district court elected to give a more general instruction. After the jury returned from lunch, the district court explained that it must "only consider evidence related to the allegations in this case[,]" and that "anything unrelated to this case must be disregarded and should not be considered" or enter into the jury's deliberations in any way. No further reference to the homicide investigation was made thereafter.

**{6}** At the conclusion of the case, the jury was instructed on the elements of the charged offenses. The given instruction on the charge of possession of drug paraphernalia, however, omitted significant portions of the uniform jury instruction. The jury found Defendant guilty on all charges, and Defendant now appeals.

## DISCUSSION

### A. Motion for Mistrial

**{7}** Defendant argues that the officer's reference to the homicide investigation was so prejudicial that a mistrial was the only adequate remedy. "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Swick*, 2012-NMSC-018, ¶ 68, 279 P.3d 747 (internal quotation marks and citation omitted). In determining whether the district court abused its discretion, we must determine whether the officer's prejudicial remark about the homicide investigation could be cured by the instruction that the district court read to the jury. *See State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016.

**{8}** When addressing a motion for mistrial based on improperly admitted evidence, as a general rule, "a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Wyatt B.*, 2015-NMCA-110, ¶ 27, 359 P.3d 165 (internal quotation marks and citation omitted). Although we apply a different analysis where inadmissible testimony is intentionally elicited by the prosecutor, in this case, it is undisputed that the prosecutor had duly cautioned the witnesses to avoid reference to the homicide investigation, and that the offending remark was unintentionally elicited by defense counsel. *See State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131 ("We apply a different analysis to inadmissible testimony intentionally elicited by the prosecution. Specifically, regardless of whether a trial court admonishes the jury not to consider the testimony, we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "For an inadvertent remark of the type at issue in this case, we have held that the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure

any prejudicial effect." *Fry*, 2006-NMSC-001, ¶ 53; *see also State v. Samora*, 2013-NMSC-038, ¶ 22, 307 P.3d 328 (holding that the defendant was not entitled to a mistrial when the witness's remark was not a deliberate violation of a pretrial order and "was therefore inadvertent and curable by a limiting instruction").

**{9}** Neither party addressed this general rule in their briefing. Instead, Defendant argues that the district court's general curative instruction, given over an hour and a half after the prejudicial remark, was ineffective because it was untimely and vague. Defendant suggests that the cumulative effect of these errors, coupled with the magnitude of the prejudice, may have tainted the verdict. *See Hernandez*, 2017-NMCA-020, ¶ 26 ("[T]here was a reasonable probability the [officer's testimony about the defendant's] purported confession and insufficient curative instruction severely prejudiced the jury's thinking and contributed to [the d]efendant's conviction."). We review Defendant's claims for harmless error. *Id.* ¶ 20.

**{10}** "When a non-constitutional evidentiary error occurs, the harmless error standard of review only requires reversal if there is a reasonable probability the inadmissible evidence contributed to Defendant's conviction." *Id.* ¶ 20 (internal quotation marks and citation omitted)). When assessing the probable effect of evidentiary error under the harmless error standard, we evaluate all of the circumstances surrounding the error, "including examining the error itself, the source of the error, the emphasis on the error, and whether the error was cumulative or introduced new facts." *Id.*

**{11}** To the extent that Defendant suggests that reference to a homicide investigation is so inherently prejudicial that mistrial is categorically warranted, we reject his argument as inconsistent with our jurisprudence. *See, e.g., State v. Aragon*, 1993-NMCA-076, ¶ 24, 116 N.M. 291, 861 P.2d 972 (holding that a detective's inadvertent mention of a homicide investigation did not require a mistrial because the remark was brief and inadvertent, and "the jury knew that the only charge was aggravated battery and had been told during voir dire that the victim's death had nothing to do with the circumstances of this case"), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. Instead, the prejudicial effect must be assessed in light of the specific circumstances presented. *See generally State v. Garcia*, 1968-NMSC-119, ¶ 11, 79 N.M. 367, 443 P.2d 860 ("Whether an admonition by the court can cure possible prejudice arising out of an improper question is a matter that must be determined according to the facts and circumstances of each case.").

**{12}** In this case, as the district court correctly noted, the potential for prejudice arising from the officer's comment regarding the homicide investigation is that the jury might speculate about Defendant's involvement in a prior bad act or infer bad character or propensity. Under similar circumstances, we held that "probability of improper prejudice was not great, particularly in light of the district court's cautionary instruction and the fact that the challenged remark was somewhat ambiguous and not emphasized by the witness or counsel." *State v. Foster*, 1998-NMCA-163, ¶ 24, 126 N.M. 177, 967 P.2d 852 (internal quotation marks and citation omitted) (holding that a police officer's remark about his prior dealings with the defendant did not require a mistrial based on improper

evidence of prior bad acts); *cf. Hernandez*, 2017-NMCA-020, ¶ 21 (holding that improper hearsay evidence of a defendant's alleged confession was highly prejudicial because the testimony related to the critical issue in the case and "confessions can prejudice the jury's thinking on certain issues which it might otherwise have been able to decide objectively" (internal quotation marks and citation omitted)). As in *Foster*, the officer's remark was both isolated and ambiguous—the officer did not state or suggest that Defendant was a suspect in the investigation or that he was guilty of the offense. And unlike *Hernandez*, the remark did not pertain to any issue in the case, and it neither contributed to the State's showing nor substantively undermined any defense theory. Under the circumstances, the district court acted within its discretion in determining that the remark was not so prejudicial as to require a mistrial. *See Foster*, 1998-NMCA-163, ¶ 24 ("[T]he district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial.").

**{13}** Moreover, Defendant was the source of the error, though unintentionally. Although the improper remark was elicited by defense counsel in the course of cross-examination, defense counsel explained that he had not anticipated the response, and his apparent reliance upon the pretrial admonition to avoid reference to the homicide investigation was not unreasonable.

**{14}** No emphasis was placed on the isolated remark—neither party made further reference to it during trial, nor did the district court's curative instruction specifically reference the homicide investigation. Although Defendant contends that the curative instruction was inadequate on that basis, it appears that the district court deliberately gave a general curative instruction with the intent to avoid emphasizing the earlier testimony, as the court declined to issue the State's more specifically tailored instruction. *See Hernandez*, 2017-NMCA-020, ¶ 25 (observing that "the district court may have deliberately made the curative instruction vague to avoid further emphasis [on the] improper reference"). Moreover, Defendant declined to offer his own curative instruction when the district court sought his input on the matter, choosing instead to press categorically for a mistrial, and thus contributed to the problem he now complains of. *See State v. Gibson*, 1992-NMCA-017, ¶ 37, 113 N.M. 547, 828 P.2d 980 (stating that "[f]ailure to accept the court's offer of a cautionary instruction may in itself justify a refusal to grant a mistrial"). "The trial court would be placed in the intolerable position of never being able to cure unwanted and spontaneous errors in testimony if we held that defendant could control the trial's progress by refusing to permit a possibly-curative admonition and yet rely on its absence to assert error." *State v. Vialpando*, 1979-NMCA-083, ¶ 25, 93 N.M. 289, 599 P.2d 1086.

**{15}** Further, the evidence of Defendant's guilt, as set out above, was compelling and substantial. *See State v. Flores*, 2018-NMCA-075, ¶ 13, 430 P.3d 534 (explaining that although other evidence of a defendant's guilt can never be the singular focus of harmless error analysis, it is often relevant to help us understand what role the error may have played in the trial proceedings). Thus, although the remark was not cumulative, in light of all of the other relevant considerations, "we conclude that there is no reasonable probability that the improper testimony contributed to the jury's verdict.

Even if the testimony should not have been admitted, the district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial." *Gonzales*, 2000-NMSC-028, ¶ 4 (internal quotation marks and citation omitted).

## B.      Elements Instruction - Possession of Drug Paraphernalia

**{16}**    Defendant contends that his conviction on Count 5 for use or possession of paraphernalia should be reversed because the jury instruction did not accurately state all of the essential elements of the offense. Because Defendant's trial counsel "made no objection to the jury instruction, we review for fundamental error." *State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426.

**{17}**    The uniform jury instruction on possession of drug paraphernalia requires the State to prove beyond a reasonable doubt that

1.      [D]efendant had [a scale] in his or her possession;

2.      [D]efendant *intended to use the [scale] to* plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body *a controlled substance*;

3.      This happened in New Mexico on or about the 2nd day of April, 2016.

UJI 14-3107 NMRA (emphasis added).

**{18}**    In this case, the instruction given to the jury failed to accurately state the second element by omitting any reference to Defendant's specific intent. Instead, the instruction provided only that

*The scale could be used* to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, product, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body[.]

**{19}**    "The general rule is that fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. In this case, the striking absence of any reference to intent, which is an essential element, signifies that reversal is in order.

**{20}**    The State suggests that the general intent instruction may have been sufficient to cure the deficiency. However, we have previously held that a general criminal intent instruction is not sufficient to address the omission of knowledge or specific intent from

the essential elements of an offense. *State v. Gonzalez*, 2005-NMCA-031, ¶ 23, 137 N.M. 107, 107 P.2d 547. We therefore reject this argument.

**{21}** Alternatively, the State suggests that the jury could have inferred the missing element from context, and that the evidence of Defendant's guilt was so compelling that the omission should not be deemed fundamental error. As previously described, the State unquestionably presented substantial evidence in support of the offense. Defendant's intent could readily have been inferred from the circumstantial evidence. *See generally State v. Guerra*, 2012-NMSC-027, ¶ 13, 284 P.3d 1076 (stating that "intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence" (alteration, internal quotation marks, and citation omitted)). However, "the question to be answered when an essential element has been omitted is whether there was any evidence or suggestion in the facts, however slight, that could have put the omitted element in issue." *State v. Lopez*, 1996-NMSC-036, ¶ 13, 122 N.M. 63, 920 P.2d 1017 (alteration, internal quotation marks, and citation omitted)*.* In this case, Defendant did not concede the requisite intent, and as previously stated, the prosecution relied on circumstantial evidence to satisfy its burden of proof. Under the circumstances, "the likelihood of a strict liability conviction [is] too great to allow the outcome to stand." *State v. Castro*, 2002-NMCA-093, ¶ 7, 132 N.M. 646, 53 P.3d 413; *see also Gonzalez*, 2005-NMCA-031, ¶ 20 (holding that failure to instruct on the essential element of knowledge, effectively converting the offense into a strict liability crime, was unfair to the defendant and constituted fundamental error). We therefore conclude that the failure to instruct the jury on the essential element of intent was fundamental error requiring reversal. Under the circumstances, "retrial with the proper instruction is the appropriate course." *Castro*, 2002-NMCA-093, ¶ 8.

## CONCLUSION

**{22}** For the reasons previously described, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.

**{23}    IT IS SO ORDERED**.

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**