This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38440**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GILBERT WILFRED SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Gilbert Sanchez appeals his convictions of fourteen felonies related to the sexual abuse of his wife's younger sister. Following a jury trial, Defendant was convicted of the following: seven counts of fourth degree felony criminal sexual penetration of a minor, age thirteen to sixteen, contrary to NMSA 1978, Section 30-9-11(G)(1) (2009); one count of third degree felony criminal sexual contact of a minor age thirteen to eighteen by use of force or coercion (person in position of authority), contrary to NMSA 1978, Section 30-9-13(C)(2)(a) (2003); one count of third degree felony intimidation of a witness (threats) (reporting), contrary to NMSA 1978, Section 30-24-

3(A)(2), (3) (1997); one count of fourth degree felony criminal sexual communication with a child, contrary to NMSA 1978, Section 30-37-3.3 (2007); one count of fourth degree felony tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); two counts of fourth degree felony contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30-6-3 (1990); and one count of fourth degree felony conspiracy to commit contributing to the delinquency of a minor, contrary to Section 30-6-3 and Section 30-28-2 (1979). On appeal, Defendant argues that (1) the district court erred by failing to sanction the State for circumventing deadlines in Rule LR2-308 NMRA (the Local Rule); (2) the State improperly elicited testimony regarding Defendant's invocation of his *Miranda* rights; (3) there was insufficient evidence to support the conviction for intimidation of a witness; (4) the district court erred by not issuing an additional jury instruction on accessory liability for the tampering with evidence charge; and (5) the district court erred by permitting improper expert testimony. For the reasons set out below, we affirm.

## BACKGROUND

**{2}**     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history, we reserve discussion of specific facts as necessary for our analysis.

## DISCUSSION

### I.     Defendant's Motion to Dismiss for Circumventing LR2-308

**{3}**     Defendant first contends that the district court erred when it failed to sanction the State—by dismissal with prejudice—for allegedly failing to comply with the time limits set out in LR2-308. Unpersuaded, we hold that the district court acted within its discretion by denying Defendant's motion to dismiss and concluding that the Local Rule did not require sanctions under these circumstances.

**{4}**     Under the Local Rule, if a party fails to comply with any provision therein, or with the time limits imposed by a scheduling order, the district court is required to impose sanctions as it may deem appropriate. *See* LR2-308(H)(1). Subsection (H)(2) of the Local Rule provides:

> In considering the sanction to be applied the court shall not accept negligence or the usual press of business as sufficient excuse for failure to comply. If the case has been re-filed following an earlier dismissal, dismissal with prejudice is the presumptive outcome for a repeated failure to comply with this rule, subject to the provisions in Subparagraph (6) of this paragraph.

**{5}**     "[District] courts possess broad discretionary authority to decide what sanction to impose when a discovery order is violated." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959. "The denial of a motion to sanction by dismissal or suppression of

evidence is reviewed for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). A district court also abuses its discretion when it uses an incorrect legal standard or misapplies the law. *See Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 7, 136 N.M. 599, 103 P.3d 39. In determining whether the district court abused its discretion, "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings," but we review the application of the law to the facts de novo. *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**{6}**     At first, Defendant was assigned a Track 3 scheduling order that mandated a trial within 455 days from his arraignment date of May 8, 2017. *See* LR2-308(F)(5)(c) ("For track 3 cases, the scheduling order shall have trial commence within four hundred fifty-five (455) days of arraignment."). Defendant's trial was scheduled for June 11, 2018. On that same day, the State filed a nolle prosequi dismissing all charges in the original case but also filed a superseding grand jury indictment charging Defendant with eighteen criminal counts.[1] Defendant was arraigned on the new indictment and assigned a Track 1 scheduling order with trial mandated to commence within 210 days of Defendant's arraignment. *See* LR2-308(F)(5)(a). Defendant's new trial date was scheduled for January 7, 2019.

**{7}**     Before Defendant's new trial date, Defendant filed a motion to dismiss, arguing that the State failed to comply with the Local Rule's time requirements because the State circumvented the Local Rule when it dismissed and immediately refiled the case. The district court concluded that the State did not violate the Local Rule—making a sanction of dismissal unnecessary. For reasons set forth below, we conclude that in making its decision, the district court considered the parties' arguments, did not misapply the law, and acted within its discretion.

**{8}**     The Local Rule requires sanctions only if there is a violation of the rule itself. *See* LR2-308(H)(1) ("If a party fails to comply with any provision of *this rule* or the time limits imposed *by a scheduling order entered under this rule*, the court *shall* impose sanctions as the court may deem appropriate in the circumstances and taking into consideration the reasons for the failure to comply." (emphases added)). Despite concern the district court voiced regarding the timing and manner of dismissal of the original indictment, it

---

[1]Originally on April 26, 2017, the State indicted Defendant on eighty-three charges, then on January 10, 2018, the State filed a supplemental grand jury indictment with five additional counts. After Defendant's motion to suppress, the district court dismissed seventy-three counts in the original indictment as well as the five additional counts in the supplemental indictment because Defendant was never arraigned on the supplemental indictment. The State's superseding indictment filed on June 11, 2018, contained the five counts in the previously dismissed supplemental indictment along with additional charges.

did not find a violation of the Local Rule or the scheduling order. Defendant concedes this point. In its order, the district court stated:

> Despite [the c]ourt's concern regarding the State's practice in this case and the *possibility* it violated [the Local Rule], as Defendant acknowledges, our appellate courts have not examined whether circumstances such as these violate the time limits imposed by [the Local Rule]. . . . Therefore, at this time, the State's dismissal of Case 1 and refiling of the present case, *apparently* to circumvent the trial deadline and avoid double jeopardy and joinder problems with later pursuing the charges in the supplemental indictment, does not provide a basis for dismissal.

(Emphases added.)

**{9}** From the record, the district court carefully considered the State's reasons for dismissal and concluded sanctions were not warranted under the Local Rule. As the State points out in its brief, the State's first action was not to dismiss the case. Under the first scheduling order, on January 10, 2018, the State filed a supplemental grand jury indictment with additional charges after the State learned of additional evidence from a safe house interview. Later, after the district court heard all outstanding pretrial motions, it entered oral rulings granting Defendant's motion to suppress evidence. As a result, on May 16, 2018, the district court dismissed seventy-three of the original eighty-three charges, including those alleged within the supplemental indictment that was filed on January 10, 2018, because Defendant was never arraigned on that indictment.

**{10}** Then, on June 4, 2018, the State filed an emergency motion for continuance of the trial because it had scheduled a grand jury proceeding for June 8, 2018, to re-present the charges in the supplemental indictment that had been dismissed and to file a single superseding indictment pursuant to the joinder requirement in Rule 5-203(A) NMRA. The State believed that it had to dismiss the case on June 11, 2018, because the district court had not yet ruled on its emergency motion for continuance. Although the district court appeared dissatisfied with the State's argument, it concluded there to be no violation of the Local Rule or the scheduling order, due in part to the Local Rule's silence on what should occur when a party acts in the manner employed by the State in this instance. Viewing the facts in the manner most favorable to the prevailing party, and pursuant to the specific language of Subsection (H)(1) of the Local Rule, we determine the district court correctly applied the Local Rule.

**{11}** We hold the district court reasonably, and within its discretion, concluded that no deadlines had passed in the original scheduling order and that sanction by dismissal with prejudice was inappropriate under the Local Rule. *See Le Mier*, 2017-NMSC-017, ¶ 22 ("We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)). Accordingly, we find no error in the district court's denial of Defendant's motion for sanctions.

## II.     Comments on Silence

**{12}**     Defendant next argues that the State elicited testimony at trial that improperly commented on the invocation of his *Miranda* rights. The issue, as raised by Defendant, is whether the court should have granted Defendant's request for a mistrial.

**{13}**     The fifth amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This amendment prohibits the prosecutor from commenting on the silence of the accused. *State v. Isiah*, 1989-NMSC-063, ¶ 10, 109 N.M. 21, 781 P.2d 293, *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. "Evidence of a defendant's post-arrest silence is generally inadmissible because the probative value . . . is substantially outweighed by the potential for unfair prejudice." *State v. Garcia*, 1994-NMCA-147, ¶ 7, 118 N.M. 773, 887 P.2d 767.

**{14}**     "[W]e review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence." *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. "[I]n cases in which a defendant has properly objected at trial, we review prosecutorial comment on silence to determine whether the error is harmless beyond a reasonable doubt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156. It is the State's burden to establish "that the constitutional error was harmless beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). Constitutional error can never be "harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* (internal quotation marks and citation omitted).

**{15}**     "Our focus must remain squarely on assessing the likely impact of the error on the jury's verdict." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 32, 136 N.M. 309, 98 P.3d 699. "We take care not to focus our harmless error analysis exclusively on whether the trial record consisted of overwhelming evidence of the defendant's guilt, so as not to risk inadvertently concluding [the] constitutional error was harmless simply because there was substantial evidence to support the conviction." *Gutierrez*, 2007-NMSC-033, ¶ 18 (internal quotation marks and citation omitted). Consequently, "in a proper harmless error analysis, the appellate court defers to the jury verdict *only* when the [s]tate has established beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 30. Finally, we "consider whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of his or her right to remain silent." *State v. DeGraff*, 2006-NMSC-011, ¶ 8, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted).

**{16}**     We first consider the testimony at issue. The State called case agent Detective Toledo to testify at trial. On direct examination, the State questioned Detective Toledo as follows:

Prosecutor:              Okay. And who did you speak to?

| | |
|---|---|
| Detective: | I spoke with [Victim]. |

. . . .

| | |
|---|---|
| Prosecutor: | Okay. Who else did you speak to that day? |
| Detective: | I collected a witness statement from [Victim's] mom. |

. . . .

| | |
|---|---|
| Prosecutor: | Okay. So you didn't speak to [Victim's father]? |
| Detective: | No, I did not. |
| Prosecutor: | Did you collect a witness statement? |
| Detective: | Correct, I did. |

. . . .

| | |
|---|---|
| Prosecutor: | Okay. And so you did see [Defendant]? |
| Detective: | Yes. |
| Prosecutor: | Did you speak with him? |
| Detective: | Yes, briefly. I advised him of his rights in accordance with *Miranda*, and he invoked those rights and refused to provide a statement. |

**{17}** Defendant immediately objected and moved for a mistrial based on the detective's comment. At a bench conference addressing the objection, the prosecutor stated that she expected the detective to say, "No, I did not speak to him." She stated that her next question would have been, "Did you speak to anyone else?" and that she expected that answer to be, "Yes, Sara Sanchez," which would have been the last question in this line of questions to the detective.

**{18}** While the district court agreed that the comment was improper, it denied Defendant's request for a mistrial. The district court concluded that the State did not attempt to draw attention to the comment and that our case law distinguishes between comments that are directly attributed to the prosecutor and those incorporated within the testimony of the witness. The district court stated:

> From what developed in this case, I don't have the impression that the State was trying to draw attention to this inadvertent comment from the detective on [D]efendant's choice not to speak, after being given the *Miranda* warning. I will absolutely preclude the prosecutor from

commenting on [D]efendant's invocation of his *Miranda* rights. You are to instruct your remaining witnesses not to make any comment about [D]efendant's choice not to speak to any law enforcement. And I'll offer a curative instruction if the defense wants to propose one.

**{19}** The State concedes that the testimony at issue was an improper comment on Defendant's right to remain silent but argues that the testimony was inadvertently elicited and harmless. We agree on this point and, while we ultimately hold that the error was harmless, we take this opportunity to caution prosecutors that when they know or should know that a defendant has exercised his right to remain silent, asking open-ended questions such as, "Did you speak with Defendant?" will likely continue to—as has been the case repeatedly in trials over many years—elicit improper responses, unnecessarily jeopardizing the fairness of trials. Here, the prosecutor's question resulted in the predictable answer that clearly and unambiguously informed the jury that Defendant invoked his right to remain silent. The testimony was thus a direct comment on Defendant's right to remain silent. Nonetheless, for the reasons set forth below, we hold that under these circumstances the improper comment was harmless beyond a reasonable doubt and does not require reversal.

**{20}** First, we recognize that these facts are similar to those in *State v. Baca* in which our Supreme Court determined that the trial court correctly denied a motion for mistrial based on testimony that commented on the defendant's refusal to speak with law enforcement. 1976-NMSC-015, ¶¶ 1-6, 89 N.M. 204, 549 P.2d 282. Just like the question posed by the prosecutor in this case, in *Baca*, the prosecutor unnecessarily asked the witness if he had interviewed the defendant. *Id.* ¶ 2. In response the detective stated, "I . . . explained a waiver of rights to him and he told me at the time he did not wish to talk to me, he wanted an attorney before he said anything. At that time I terminated the interview, took him to the jail." *Id.* (internal quotation marks omitted). *Baca* held that the detective's testimony appeared to be "unsolicited, and possibly inadvertent," *id.* ¶ 3, and drew "the line between those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness." *Id.* ¶ 5. Remarkably similar to the testimonial exchange in this case, we see no reason to stray from *Baca*'s reasoning and ultimate conclusion that the comment did not require reversal. *Id.* ¶¶ 1-6.

**{21}** Second, in this case, the prosecutor did not pursue the detective's comment or otherwise exploit the reference. The prosecutor continued with the sequence of the detective's interviews and did not refer to the comment during closing argument. *See State v. Allen*, 2000-NMSC-002, ¶¶ 29-30, 128 N.M. 482, 994 P.2d 728 (noting that the prosecutor did not argue to the jury that they should infer guilt from the fact that the defendant stopped talking during his statement to the police). In context, the prosecutor's question and Detective Toledo's response were isolated, brief, and indirect. *See DeGraff*, 2006-NMSC-011, ¶ 21 (recognizing that "more direct prosecutorial comments on a defendant's invocation of the right to remain silent are more likely to be fundamental error"). The prosecutor did not ask any additional questions on the matter, and the detective never testified further on the subject. *Cf.*

*State v. McDowell*, 2018-NMSC-008, ¶¶ 1, 6, 411 P.3d 337 (holding that fundamental error occurred where the prosecutor twice commented on the defendant's exercise of his right to counsel during a police interview and elicited testimony that, as a result of the defendant's request for an attorney, police could not question him further). Most significantly, the prosecutor never called upon the jury to infer guilt from Defendant's invocation of his right to remain silent. *See, e.g.*, *Allen*, 2000-NMSC-002, ¶ 30 (finding no plain or fundamental error where the prosecutor "did not argue to the jury that they should infer [the d]efendant's guilt from the fact that he stopped talking after making the statement in question, or that [the d]efendant had an obligation to elaborate on his prior statement"); *State v. Costillo*, 2020-NMCA-051, ¶¶ 16, 19, 475 P.3d 803 (reversing conviction in which the prosecution elicited testimony of the defendant's invocation of his right to remain silent in part based upon the prosecutor "directly exploit[ing the d]efendant's refusal to answer [a detective's] questions throughout the proceedings").

**{22}** Third, this case stands in stark contrast to *Garcia*, the sole case relied on by Defendant to support his argument that the impermissible comment on Defendant's right to remain silent established insurmountable prejudice. In *Garcia* the prosecutor's questioning pointed out that "(1) innocent suspects with alibis may, and do, disclose their alibis to officers at the time of arrest[;] (2) [the d]efendant had been with [the detective] for approximately an hour after the arrest[;] and (3) [the d]efendant made no mention of his alibi during that period of time, or for a significant period of time thereafter." 1994-NMCA-147, ¶ 13 (stating that "[t]he prosecutor undoubtedly believed that it was proper to use [the d]efendant's silence after his arrest as evidence that his alibi defense was a recent fabrication"). Here, unlike in *Garcia*, the prosecutor asked only one question and never again drew attention to Defendant's invocation of his right to remain silent. Whereas, in *Garcia*, the prosecutor drew an inordinate amount of attention to the defendant's assertion of his right to remain silent in an effort to bolster the prosecution's contention that the defendant was fabricating his alibi defense. *Id.* ¶ 15. Thereby, the prosecutor in *Garcia* created substantial prejudice against the defendant such that there was clearly a reasonable probability that the testimony elicited was a significant factor in the jury's deliberations. *Id.* ¶¶ 17-18. Here, we are confronted with the polar opposite of the circumstances present in *Garcia*. Thus, we agree with the district court's conclusion that the prosecutor did not attempt to draw attention to Defendant's silence. *See DeGraff*, 2006-NMSC-011, ¶ 8 ("We evaluate the statement in context to determine the manifest intention that prompted the remarks as well as the natural and necessary impact upon the jury." (internal quotation marks and citation omitted)).

**{23}** Thus, viewing the comment in context, and for the reasons stated above, we hold that the improper testimony does not require reversal and the district court properly denied the motion for a mistrial. *See, e.g.*, *Foster*, 1998-NMCA-163, ¶ 24 (observing that "the district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial").

## III.    Sufficiency of the Evidence for Intimidation of a Witness

**{24}** Defendant next argues that the evidence presented at trial is insufficient to support his conviction of one count of third degree felony intimidation of a witness (threats) (reporting), contrary to Section 30-24-3. "When considering whether sufficient evidence exists to support retrial, we consider all evidence—even that which was wrongfully admitted." *State v. Miera*, 2018-NMCA-020, ¶ 47, 413 P.3d 491. We "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256 (internal quotation marks and citation omitted). We then determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{25}** In this case, the jury was instructed that, to find Defendant guilty of intimidation of a witness, the State had to prove beyond a reasonable doubt that Defendant

> knowingly intimidated and/or threatened [Victim] with the intent to keep [Victim] from truthfully reporting to a law enforcement officer or any agency that is responsible for enforcing criminal laws information relating to the commission or possible commission of criminal sexual penetration, criminal sexual contact, criminal sexual communication with a child, or contributing to the delinquency of a minor.

*See* UJI 14-2403 NMRA; § 30-24-3; *see also State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{26}** Here, the evidence established that Defendant told Victim not to tell anyone what he was doing to her. Specifically, Defendant told Victim, "Don't tell anyone about this or I could go to jail." Defendant concedes this point in his brief. Victim testified that she did not tell anyone because she was afraid of getting Defendant in trouble. Victim's trial testimony alone, with its description of Defendant's conduct, is sufficient to "justify a finding by any rational trier of fact that each element of the crime charged has been established." *Storey*, 2018-NMCA-009, ¶ 45 (internal quotation marks and citation omitted). Viewing this evidence in the light most favorable to the State, it sufficiently supports Defendant's conviction for the charge of intimidation of a witness. Accordingly, we hold that sufficient evidence supported Defendant's conviction as to the charge of intimidation of a witness.

## IV. Accessory Liability Jury Instruction

**{27}** Defendant next contends that, because he asked Victim to delete everything from her phone related to his actions with her and did not physically tamper with the evidence himself, the district court erred when it rejected Defendant's request to submit an additional jury instruction on accessory liability in relation to the tampering with evidence count. Defendant does not contend that the jury instruction for tampering with

evidence was erroneous, only that the additional jury instruction, UJI 14-2822 NMRA on accessory liability, should have been provided as well.

**{28}** Defendant contends that because he only "asked" Victim to delete everything from her phone without coercing her to do so, he was entitled to an accessory liability instruction in conjunction with a tampering with evidence instruction. However, "[a]ccomplice liability requires that the defendant share the criminal intent of the principal. There must be community of purpose, partnership in the unlawful undertaking." *State v. Johnson*, 2004-NMSC-029, ¶ 34, 136 N.M. 348, 98 P.3d 998 (internal quotation marks and citation omitted). Defendant makes no argument as to the intent of Victim or how the elements of UJI 14-2822 were met, or otherwise develop his argument. Instead, Defendant relies on *State v. Parish*, 1994-NMSC-073, 118 N.M. 39, 878 P.2d 988, as an analogous case, and then directs us to an example where an accomplice instruction was given alongside a tampering charge in *State v. Montoya*, 2016-NMCA-098, ¶ 25, 384 P.3d 1114. Defendant's reliance on *Parish* is misplaced given that *Parish* does not touch upon the issues presented here. Rather, *Parish* discusses whether a jury instruction should include "unlawfulness" when self-defense was claimed. *See* 1994-NMSC-073, ¶¶ 1, 5. Further, Defendant fails to argue how *Montoya* applies to these circumstances. Consequently, we conclude that Defendant's arguments on this issue are undeveloped and will not address them further for the reasons set forth in the following paragraph.

**{29}** This Court operates pursuant to a presumption of correctness in favor of the district court's rulings, and it is the appellant's burden to demonstrate error on appeal. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing such error). Additionally, "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Lastly, "[w]e will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Therefore, we will not address this argument as it is unclear or underdeveloped. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 ("[T]his Court has no duty to review an argument that is not adequately developed.").

## V.    The State's Expert Witness Testimony

**{30}** Last, Defendant argues that the State's expert witness improperly bolstered the credibility of Victim. Defendant specifically contends that the expert improperly testified that Victim "was exposed" to certain types of traumas rather than having stated that "Victim's behavior was consistent with" someone being exposed to trauma.

**{31}** We review a district court's decision to admit or exclude evidence, including expert testimony, for an abuse of discretion. *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. An abuse of discretion occurs where "the trial judge's action was obviously erroneous, arbitrary, or unwarranted" or is "clearly against the logic

and effect of the facts and circumstances before the court." *Id.* ¶ 63. Our case law is explicit in its prohibition against an expert witness' direct testimony regarding the credibility or truthfulness of an alleged victim of sexual abuse. *Id.* ¶ 84 (stating that while expert testimony on PTSD "may be offered to show that the victim suffers from symptoms that are consistent with sexual abuse, it may not be offered to establish that the alleged victim is telling the truth; that is for the jury to decide"). Our own review of the record in this case, however, does not support Defendant's contention that the State's expert witness violated that prohibition. Rather, the testimony regarding Victim was well within the permitted scope of expert testimony. We explain.

{32}    At trial, the State's expert witness testified that she diagnosed Victim with post-traumatic stress disorder (PTSD). After the expert explained that PTSD requires a person to have been exposed to certain types of trauma, including the threat of death or serious injury or sexual violence, Defendant objected to the following testimony:

| [Prosecutor]: | [B]ased upon your conversation with [Victim], . . . she was exposed to those types of traumas? |
|---|---|
| [Expert Witness]: | Yes. |

{33}    We conclude that the expert's testimony was proper under our jurisprudence regarding expert opinion testimony. Similar to the witness in *Alberico*, the State's expert "did not identify [Defendant] as the probable perpetrator or inculpate him in any way" nor "establish that [Victim] is telling the truth" and did not disturb "the jury's function as arbiter of the witnesses' credibility." *Id.* ¶¶ 10, 84, 88. As in *Alberico*, here the "[i]ncidental verification of [the] victim's story or indirect bolstering of her credibility . . . is not by itself improper" since "[a]ll testimony in the prosecution's case will tend to corroborate and bolster the victim's story to some extent." *Id.* ¶ 89.

{34}    Here, the State's expert never stated that she believed Victim was credible nor did she identify Defendant as the perpetrator of the trauma. The expert responded affirmatively to a line of questioning concerning the basis for her diagnosis of PTSD, as permitted by *Alberico*. *See id.* ¶ 10. The expert did not state that Victim was exposed to sexual abuse, as the witness made clear there are other types of traumas required for a diagnosis of PTSD which include exposure to "death or the threat of death or serious injury or sexual violence." *See State v. Salazar*, 2006-NMCA-066, ¶ 8, 139 N.M. 603, 136 P.3d 1013 (stating that an expert may "give testimony regarding symptoms that the victim suffers that are consistent with sexual abuse" but not testimony "to establish . . . that the symptoms were in fact caused by sexual abuse"). In sum, the expert testified that she diagnosed Victim with PTSD, a diagnosis that requires exposure to one of several types of trauma, and she concluded, based on her conversations with Victim, that Victim had been exposed to one of those traumas in support of her diagnosis. Accordingly, the expert's testimony did not improperly bolster Victim's testimony, and the district court did not abuse its discretion by admitting the expert's testimony.

**CONCLUSION**

**{35}** For the reasons stated above, we affirm.

**{36}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**